# 97 DTA 123

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**
**PANEL IV**

ICA MIRAMAR METRO SAN JUAN CORP.
Demandante-Recurrente

v.

AUTORIDAD DE CARRETERAS Y TRANSPORTACION; ING. SERGIO GONZALEZ, DIRECTOR EJECUTIVO; JUNTA DE SUBASTAS DE LA AUTORIDAD DE CARRETERAS Y TRANSPORTACION; OFICINA DEL TREN URBANO; DR. CARLOS COLON, DIRECTOR EJECUTIVO DE LA OFICINA DEL TREN URBANO
Demandados-Recurridos

Núm. KLAA-97-00010

San Juan, Puerto Rico, a 3 de junio de 1997

Panel integrado por su presidenta, la Juez López Vilanova, el Juez Cordero y la Juez Feliciano de Bonilla

López Vilanova, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La recurrente, ICA Miramar Metro San Juan Corp. (Miramar Metro), solicita la revisión de la determinación de la Junta de Subastas de la Autoridad de Carreteras y Transportación (la Autoridad) mediante la cual no se le adjudicó la buena pro de la subasta para la construcción del tramo de Río Piedras del sistema de transportación del Tren Urbano. Además, mediante moción en auxilio de jurisdicción, solicita la paralización de los procedimientos ante la Junta de Subastas de la Autoridad, incluyendo la otorgación de contratos con el licitador agraciado.

En su recurso de revisión Miramar Metro plantea, en síntesis, que la adjudicación de la subasta viola las garantías procesales mínimas contenidas en la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. secs. 2101-2201, los criterios establecidos por la Autoridad en su invitación a someter propuestas, y su derecho constitucional a un debido proceso de ley, por no brindársele una oportunidad de ser oído y presentar evidencia sobre cualquier señalamiento relativo a su propuesta previo a la adjudicación final.

Evaluada la solicitud de paralización y considerados los documentos sometidos y el derecho aplicable procede denegar el recurso por los fundamentos más adelante expuestos.

### I
Los hechos que enmarcan la controversia son los siguientes. La Autoridad solicitó propuestas para la subasta de construcción del tramo de Río Piedras del sistema de transportación del Tren Urbano, denominado *"Río Piedras Contract: Alignment Section 7"*. Miramar Metro fue uno de los licitadores que presentó propuesta para la referida subasta y como todo licitador recibió el documento de Solicitud de Propuestas suscrito por la Autoridad. ██

El procedimiento a seguir para la adjudicación final de la subasta requería la designación por la Autoridad de un Comité de Evaluación que en unión a la Junta de Subastas evaluaría las distintas propuestas, para determinar aquellas que cumplían con los criterios bajo tres categorías, a saber: experiencia, técnica y administración; precio; y capacidad y riesgo financiero.

El Director Ejecutivo denegó la solicitud de reconsideración. Basó su negativa en que la Autoridad no venía obligada a exponer los fundamentos en apoyo de su determinación de adjudicar la subasta a favor de cualquier licitador. Determinó que la sección aplicable a las solicitudes de reconsideración de subastas era la sección 319 de la Ley de Procedimiento Administrativo Uniforme, *supra*, 3 L.P.R.A. sec. 2169, y no la sección 3.14 como pretendía la recurrente. Expresó que dicha sección dispone que la adjudicación de subastas será un proceso informal regulado por las agencias. Concluyó, además, que no existe disposición reglamentaria de la Autoridad que requiera que se expliquen los fundamentos en que basó la agencia su adjudicación. Expresó desconocer de precedente bajo el debido proceso que estableciera el derecho a dicha información. Sin embargo, y no empece el concluir que no estaba obligado a ello, en esta comunicación la Autoridad expuso los fundamentos para la selección del Consorcio KKZ/CMA por sobre la propuesta de Miramar Metro.

Contra dicho dictamen Miramar Metro interpuso el presente recurso de revisión, bajo los señalamientos de errores previamente reseñados y discutidos más adelante. ██

### II
La función revisora de los tribunales con respecto a las determinaciones de las agencias administrativas es una de carácter limitado. Es principio reiterado que las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran deferencia si las mismas están sostenidas por evidencia sustancial. Sección 4.5 F de la Ley de Procedimiento

Administrativo Uniforme, *supra* , 3 L.P.R.A. sec. 2175; *García Oyola v. Junta de Calidad Ambiental,* 142 D.P.R. __ (1997), **97 J.T.S. 25**, a la pág. 662; *Metropolitana S.E. v. A.R.P.E.,* 140 D.P.R. ___ (1995), **95 J.T.S. 39**, a la pág. 767.

Esto es así, pues las agencias administrativas cuentan con: experiencia y conocimientos altamente especializados sobre los asuntos que se encuentran dentro del ámbito de sus facultades y responsabilidades. *La Facultad para las Ciencias Sociales v. C.E.S.,* 134 D.P.R. ___ (1993), **93 J.T.S. 88**, a la pág. 10783; *Asociación de Doctores v. Morales,* 133 D.P.R. ___ (1993), **93 J.T.S. 12**, a la pág. 10349.

La intervención con dichas determinaciones sólo estará justificada cuando la agencia obre de manera arbitraria, ilegal, en forma tan irrazonable que su actuación constituyó un abuso de discreción, o cuando la determinación no se sostenga mediante prueba sustancial. *Misión Industrial de P.R., Inc. v. Junta de Planificación,* 142 D.P.R. ___ (1997), **97 J.T.S. 34**, a la pág. 728; *Fuertes v. A.R.P.E.,* 136 D.P.R. ___ (1993), **93 J.T.S. 165**, a la pág. 11383; *Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 692, 699 (1975).

En conclusión, los tribunales deben indagar sobre la razonabilidad de la decisión administrativa y no deben sustituir el criterio de dicho organismo por el suyo propio a menos que la actuación administrativa sea totalmente arbitraria o que se infrinjan valores constitucionales fundamentales. *La Facultad para las Ciencias Sociales v. C.E.S., supra,* a la pág. 10783.

Es por ello que, sobre la parte que impugna la determinación de la agencia recae el peso de probar que la misma fue arbitraria, irrazonable o que se tomó en ausencia de evidencia sustancial. *Henríquez v. C.E.S.,* 120 D.P.R. 194, 210 (1987).

Conforme los principios antes esbozados, se reconoce que existe una presunción de legalidad y corrección a favor de las decisiones administrativas, *A.R.P.E. v. Junta de Apelaciones Sobre Construcciones y Lotificaciones,* 124 D.P.R. 858, 864 (1989); *Murphy Bernabé v. Tribunal Superior, supra,* a la pág. 699.

En el ámbito de la controversia del caso del epígrafe, resulta conveniente destacar que la determinación acerca de cuál entidad debe resultar agraciada en el proceso de adjudicación debe resolverse a la luz del interés público, por cuanto en una subasta ningún licitador puede hacer reclamos de derechos adquiridos. *Great American Indemnity Co. v. Gobierno de la Capital,* 59 D.P.R. 911, 917 (1942). Más aún, se reconoce que en ausencia de mala fe, fraude o un claro abuso de discreción, ningún licitador tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa. Le corresponde así a la parte que impugna la subasta en la etapa de revisión el peso de la prueba para establecer que no existe base racional que sostenga la decisión administrativa que es objeto de impugnación. *Smith & Wesson v. United States,* 782 F.2d 1074, 1078-1079 (1st Cir. 1986).

## III

A la luz de los principios esbozados evaluemos los señalamientos hechos por la recurrente. En primer lugar alega Miramar Metro, sin fundamento adecuado en su discusión, que la adjudicación de la subasta viola las garantías procesales mínimas contenidas en la Ley de Procedimiento Administrativo Uniforme, *supra,* y los criterios establecidos por la Autoridad en su invitación a someter propuestas.

De entrada, conviene establecer que la sección que gobierna los procedimientos de adjudicación de subastas es la sección 3.19 de la Ley de Procedimiento Administrativo Uniforme, *supra,* 31 L.P.R.A sec. 2969. Esta dispone taxativamente que estos *"[s]erán procedimientos informales; su reglamentación y términos serán establecidos por las agencias".* A estos efectos el Tribunal Supremo de Puerto Rico ha expresado:

*"Nuestra interpretación del texto de la referida Sec. 3.19 de la LPAU está avalada, además, por su historial legislativo. Dicha disposición fue añadida a la LPAU el 5 de agosto de 1989, mediante la Ley Núm. 43 de esa fecha. Al aprobar esta enmienda, el legislador buscaba asegurar que los procedimientos de adjudicación de subastas en las agencias fuesen de naturaleza informal, sin que*

*las partes pudiesen requerir que se convirtiesen en procedimientos formales; y que las normas y términos de tales procedimientos informales se estableciesen por reglamentación de la propia agencia que celebraba subastas. Sin embargo, el propio legislador hizo dos excepciones al propósito de informalidad antes reseñado; una relativa a la reconsideración, y la otra a la revisión judicial".* Cotto Guadalupe v. Departamento de Educación, 140 D.P.R. ___ (1995), **95 J.T.S. 79**, a la pág. 972. Como vemos la propia Ley excluye los procedimientos de adjudicación de subastas de las disposiciones para procesos adjudicativos dispuestas en la ley. Dispone también que su reglamentación será establecida por la propia agencia y la misma deberá ser de carácter informal. Por tanto, la alegación de que en el proceso de adjudicación no se cumplieron con las garantías mínimas dispuestas en la Ley de Procedimiento Administrativo Uniforme no encuentra apoyo en la misma ley. Por otro lado, contrario a lo planteado por Miramar Metro, el proceso seguido por la agencia sí estuvo conforme con lo dispuesto en el documento de Solicitud de Propuestas y lo establecido en el Artículo VIII del Reglamento de Subastas de la Autoridad, vigente desde el 30 de julio de 1995.

Las propuestas fueron evaluadas por el Comité de Evaluación y por la Junta de acuerdo a las tres categorías de evaluación establecidas para determinar las propuestas que se encontrarían dentro de los límites competitivos. Luego de esto se llevaron a cabo discusiones con los licitadores para alcance de sus respectivas propuestas. Valga señalar que el propio Reglamento de Subastas de la Autoridad dispone que *"el contenido y la extensión de las discusiones entre la Junta o el Comité de Evaluación y cada Licitador los determinará la Junta o el Comité de Evaluación basada en hechos y circunstancias particulares de cada Propuesta".* Artículo VIII (C)(3)(b) del Reglamento de Subastas de 1995. Fue a base de la evaluación de las propuestas sometidas que la Autoridad adjudicó la subasta al Consorcio KKZ/CMA.

Cabe destacar que el propio documento de Solicitud de Propuestas dispuso que no existiría un peso fijo para cada categoría de evaluación. Claramente expresaba que la Autoridad seleccionaría la propuesta que considerara reflejaba el mejor valor, es decir, la mejor combinación de precio, calidad técnica, experiencia y riesgo.

Miramar Metro aparenta basar su reclamo de arbitrariedad en que si se ha cumplido con todos los requisitos establecidos para la subasta lo determinante para la adjudicación es el precio. Incide en su análisis.

Todo lo contrario, cuando por la complejidad del proyecto es necesario la consideración de distintos criterios para una adjudicación final, el establecer la regla inflexible de que, cumplidos los otros criterios, la subasta tiene que adjudicarse al licitador del precio más bajo resultaría en una norma arbitraria y detrimental para el beneficio público. En su contestación a la solicitud de reconsideración la Autoridad expresó los fundamentos para su decisión. Con respecto a la evaluación para la primera categoría, experiencia, técnica y administración, la Autoridad determinó que la propuesta de Miramar Metro fue sólo adecuada en comparación de la del licitador agraciado que fue clasificada de excelente. Concluyó, en síntesis, que aunque el diseño técnico y de construcción propuesto por Miramar Metro era viable, el plan de trabajo presentaba numerosas interrogantes sobre aspectos importantes y demostraba falta de atención a detalles y menos conocimiento del ambiente geotécnico.

En cuanto a la tercera categoría, capacidad y riesgo financiero, la Autoridad concluyó que la propuesta de Miramar Metro presentaba incertidumbres significativas. Expresó que Miramar Metro era una corporación recién formada, sin historial operacional, y que dependía de otras cuatro compañías para el soporte financiero, cada una de las cuales mostraban a su vez serias interrogantes financieras. Como resultado de esta situación la Autoridad le solicitó a Miramar Metro que obtuviera una garantía de la última compañía matriz en la familia corporativa de las Empresas ICA, Empresas ICA Sociedad Controladora, S.A. de C.U.; sin embargo, Miramar Metro sólo presentó la garantía de Empresas ICA, una de las a cuatro compañías antes mencionadas.

La Autoridad determinó que sólo en la categoría de precio la propuesta de Miramar Metro fue menor que la propuesta del licitador agraciado aunque, según expresado por la Autoridad, sólo de manera marginal. Sin embargo, concluyó que en vista de la evaluación en agregado para todas las categorías, la propuesta del Consorcio KKZ/CMA representaba el mejor valor para la Autoridad.

En definitiva, a la luz de la presunción de legalidad y corrección que ampara a las decisiones administrativas, concluimos que la recurrente no cumplió con su obligación de establecer que la determinación de la Autoridad fue arbitraria o irrazonable; es decir, carente de base racional para sostener su determinación.

Por último, amparada en el debido proceso de ley, alega Miramar Metro que cumplió con todos los requisitos de la subasta y que era el postor más bajo; que para que una determinación incida con su expectativa de obtener la subasta era necesario la celebración de una audiencia. Alega, por tanto, que al no garantizarse ese derecho fundamental se vició de nulidad el proceso.

La alegación debe examinarse partiendo del principio de que ningún licitador tiene un derecho adquirido en una subasta. Como antes mencionado, en ausencia de arbitrariedad o ilegalidad en el proceso de adjudicación ningún licitador tiene derecho a reclamar cuando otra propuesta es seleccionada como la más ventajosa para la agencia. *Great American Indemnity Co. v. Gobierno de la Capital, supra,* a la pág. 917.

Al referirse a la sección 3.19 de la Ley de Procedimiento Administrativo Uniforme, *supra,* el Tribunal Supremo de Puerto Rico fue categórico al expresar:

*"Con las enmiendas relativas a las subastas se pretende simplificar los procedimientos adjudicativos de subastas, de forma que sólo se consideren procedimiento[s] formales, la reconsideración y la revisión judicial, obviándose los requisitos del Capítulo III de la Ley 170 en todo el proceso anterior a la reconsideración, y limitándose los procesos formales a la propia moción de reconsideración, sin que se provea para descubrimiento de prueba u otros procedimientos por ley, dejando a las agencias disponer por reglamen todo lo relativo al proceso de subasta,...".*

*Cotto Guadalupe v. Departamento de Educación, supra,* a la pág. 972 (citando del Informe de la Comisión de lo Jurídico del Senado del 25 de junio de 1989, en ocasión de la enmienda a la Ley de Procedimiento Administrativo Uniforme que añadió,así mediante la Ley Núm. 43 de 5 de agosto de 1989, la sección, 3.19)

Como vemos, el propósito de la aprobación de dicha seción fue el dotar de una naturaleza informal a los procedimientos adjudicativos de subastas, librándolos así de cumplir con los requisitos establecidos en la ley para los otros procedimientos adjudicativos, entre los que se encuentran el derecho a una vista adjudicativa y a presentar evidencia, que aquí invoca la recurrente. Siendo así, no le asiste la razón. El proceso, según establecido por la Autoridad en el Artículo VIII de su Reglamento de Subastas y reproducido en el documento de Solicitud de Propuestas, era uno justo y equitativo para todos los licitadores.

## IV

No hay base en este caso para intervenir con la determinación de la Autoridad aquí recurrida, por ello denegamos la expedición del recurso.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 123

1. Miramar Metro resultó el licitador agraciado en la subasta del tramo de Bayamón del proyecto de construcción del Tren Urbano, denominado Bayamón Contract: Alignment Section 1 - Phase I. Exhibit 4 del Apéndice del recurso de revisión, pág. 271.

2. Originalmente el presente recurso fue presentado ante el Tribunal de Primera Instancia. Este, en virtud del artículo 4.002(g) de la Ley de la Judicatura de 1994, Ley Núm. 1 de 28 de julio de 1994, según enmendada, 4 L.P.R.A. sec. 22k(g), trasladó el recurso a este Tribunal.